UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMERA MUNRO,

    Plaintiff,

v.                                                              Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,          Case No. 1:20-cv-00555

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making the decision and whether there exists in the record substantial evidence supporting that decision. *See*

*Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff applied for Title II benefits on April 23, 2018, alleging that she had been disabled since November 16, 2017, due to a torn rotator cuff, right shoulder; chronic hypoglycemia; and hypothyroid. (PageID.52.) She was 52 years old on the alleged onset date. (*Id.*) The application

was initially denied on July 11, 2018, and she requested a hearing before an administrative law judge (ALJ), which took place on May 31, 2019.

ALJ Donna J. Grit conducted the hearing on May 31, 2019, and received testimony from Plaintiff and Sandra-Smith Cordingly, an impartial vocation expert. (PageID.49.) On June 14, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled at any time between her alleged onset date and the date of the decision. (PageID.49.) The Appeals Council denied Plaintiff's request for review on April 20, 2020. (PageID.35-39.) Thus, ALJ Grit's ruling became the final decision of the Commissioner. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff now appeals.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which the residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of November 16, 2017, through the date of the decision. (ECF No. 14-2, PageID.51.) The ALJ also determined that, through the date of the decision, Plaintiff had the following severe impairments: degenerative joint disease of the right shoulder, right shoulder rotator cuff tears, status-post repair; and status-post bariatric surgery. (PageID.51.) At step three, the ALJ found that none of the Plaintiff's impairments or combinations of impairments met or medically equaled the severity of one of the listed impairments. (PageID.51-52.)

At step four, the ALJ found that, through the date of the decision, Plaintiff had the residual functional capacity to perform light work, except that:

> she cannot climb ladders, ropes, or scaffolds, and she cannot crawl. However, she can frequently stoop, crouch, kneel, and climb ramps and stairs. She can do no more than occasional overhead reaching with the right upper extremity. She can frequently reach in all other directions with the right upper extremity. And she can occasionally push/pull with the right upper extremity.

4

(ECF No. 14-2, PageID.52.)

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Here, the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 235,000 jobs nationally which an individual with Plaintiff's RFC could perform, those limitations notwithstanding. This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ found Plaintiff not to be disabled through the date of the decision. (PageID.60-61.)

## DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's determination of her RFC because it "ignores and misstates" evidence related to the severity of her hypoglycemic episodes and should have been further restricted.

The RFC is an administrative finding of fact reserved to the Commissioner. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *1-2 (July 2, 1996)."). A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* Social Security Ruling 96-8P, at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). "The ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ's function is to resolve conflicts in the evidence. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). While the ALJ makes the RFC determination, that determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012).

An ALJ must evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability in accordance with SSR 16-3p. As explained in *Palmer v. Comm'r of Social Security*, No. 1:17-cv-577, 2018 WL 4346819 (W.D. Mich. Aug. 9, 2018), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 11, 2018):

> The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)). Relevant factors to be considered in evaluating symptoms are listed in 20

>> C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

*Id*. at *6; *see also* 20 C.F.R. § 416.929(c)

Consistent with prior ruling SSR 96-7p, *see Rogers*, 486 F.3d at 248, SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Sixth Circuit has said that such findings "may not be disturbed absent compelling reason," and in general, "are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted).

With regard to Plaintiff's hypoglycemic episodes, the ALJ stated:

> The claimant had gastric bypass surgery in 2008 (Ex. 1F/2). Presurgically, she had a weight of 338 pounds (*Id*.). However, following the surgery she was successfully able to get her weight down as low as 145 pounds (*Id*.). Unfortunately, the claimant's treatment notes indicated that starting in approximately 2013 or 2014, she began to have hypoglycemic events, because of her bariatric surgery (*Id*.). This included reported symptoms of fatigue, confusion, tremor, shakiness, weakness, nausea, and tunnel vision (*Id*.).

> The claimant testified that her episodes gradually increased, until she was having 3-5 hypoglycemic episodes per day (Testimony at 11:25:30). And she reported that the longest she ever went without an episode was approximately four days (Testimony at 11:33:08). The claimant sought specialist consultation at the University of Michigan concerning her hypoglycemic events, status-post bariatric surgery, and she was told that gastric bypass reversal, or partial pancreatectomy were two treatment options (Ex. 1F/2). However, the claimant indicated that she

7

would rather, "live like this" than regain weight, or develop Type I diabetes (Ex. 1F/3).

(PageID.53.) Plaintiff argues that this is correct but omits reference to two key pieces of evidence: (1) her log of hypoglycemic events; and (2) the FMLA documentation that her doctors submitted to her employer.

As to the Plaintiff's log of hypoglycemic events, the ALJ does indicate that she reviewed it. (PageID.56.) Nonetheless, she found that "claimant's testimony concerning the frequency of her hypoglycemic events was inconsistent with multiple treatment notes, and the medical evidence throughout the record in question, documented by multiple different treatment providers." (PageID.56.) Specifically, Plaintiff testified that (at the time of the hearing) she was having hypoglycemic episodes three to four times a week, and she would be "out of it for the rest of the day." (PageID.85.)[2] The ALJ stated:

> the claimant's testimony concerning the frequency of her alleged episodes was inconsistent with her treatment notes. The claimant alleged that her hypoglycemic events increased over time, beginning in 2013, and eventually reaching the point that she had events 3-5 times per day (Testimony at 11:25:30). However, in March of 2017, she reported that medication therapy with 1.2 mg Victoza was "very helpful," and she had episodes only 1-2 times per week; and because she had improvement in her episodes, she was actually not checking her blood sugar as often as she had in the past (Ex. 1F/3). Notably, she was told at that time to increase her Victoza from 1.2 mg per day, up to 1.8 mg per day if her symptoms became more severe or problematic (Ex. 1F/3-4). Subsequently, in October of 2017, she reported checking her sugars 0-1 times per day (Ex. 1F/10). And she reported having episodes 2-3 times per week (Ex. 1F/11). However, she again noted that she was not checking her sugars often due to symptom improvement (*Id.*). And she reiterated that she was still taking 1.2 mg Victoza (Ex. 1F/18). The following month, on the day of her surgery, she was still taking 1.2 mg Victoza (Ex. 1F/18). And by October of 2018, she reported that her episodes were down to once every two weeks, with 1.8 mg Victoza (Ex. 6F/2).

---

[2] Plaintiff argues that the ALJ never asked her how often the episodes were occurring at the time of the hearing. (Br. at 10, PageID.475.) But, as noted above, counsel did, so that was part of the record before the ALJ.

(PageID.56.) Following this discussion of the notes from Plaintiff's practitioners, the ALJ noted that Plaintiff had "subsequently provided a hypoglycemic event diary, documenting events in March and April of 2019 (Ex. 13E)." That log purported to list more frequent episodes. And the ALJ noted that Plaintiff testified that the entries in Dr. Soubliere's treatment notes from October 2018 "concerning the frequency of her episodes were incorrect." (PageID.56.) On that basis, the ALJ found that Plaintiff's testimony concerning the frequency of her hypoglycemic events was inconsistent with the medical record. (PageID.56.)

Plaintiff argues that the ALJ should have considered all of the medical notes regarding frequency, rather than focusing on the latest, which was also the least. However, it was reasonable for the ALJ to consider (as she did), that the initiation of Victoza and then increase in the dosage had resulted in greatly reduced symptoms. It was also reasonable for the ALJ to find Plaintiff's testimony that she was having three to four episodes a week by the time of the hearing (PageID.85) inconsistent with the medical record. The ALJ considered the episode log and appropriately discounted it based on the medical record. (PageID.56.)

As to the FMLA documentation, Plaintiff argues they provided evidence that Plaintiff would have weekly episodes of one day in duration and that the vocational expert testified that amount of absenteeism would be work preclusive. While the ALJ does not specifically reference the FMLA documentation (PageID.201-233), her reference to the underlying medical notes from Dr. Soubliere (who also submitted all but the earliest FMLA form related to hypoglycemia) renders that unnecessary. The contemporaneous medical notes provide more detail and context than the conclusory statements regarding leave required. Moreover, the last relevant FMLA form was dated July 2017, before later treatment notes indicated improvement with a higher dosage of Victoza. (*Compare* PageID.228-232 *with* PageID.432-35.) It is apparent from the ALJ's discussion of

9

Plaintiff's hypoglycemic events that she considered all evidence in the record—she was not required to specifically note the FMLA documentation. *Rudd*, 531 F. App'x at 730 ("the ALJ was not required to discuss all the evidence, as long as her factual findings as a whole show that she implicitly considered the record as a whole"); *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion"); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (quoting *Loral Defense Sys. - Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Plaintiff's challenge to the ALJ's findings regarding the claimed severity and frequency of the hypoglycemic episodes amounts to a request to re-weigh the evidence, which the Court cannot do. *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary.") (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)); *see also Rumsey v. Comm'r of Soc. Sec.*, No. 1:17-cv-749, 2018 WL 4346823, at *4 (W.D. Mich. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 4334624 (W.D. Mich. Sept. 11, 2018) ("The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence.") (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)). Plaintiff is correct that, if she were absent one day every two weeks, the vocational expert had testified that that would be work preclusive. However, even considering the FMLA record at face value, it estimates only that Plaintiff could have an episode requiring absence one day per week, and the basis for that statement is not offered. (PageID.231.) Moreover, as discussed above, subsequent medical notes indicated

improvement with treatment. And, as the Commissioner points out (PageID.491), Plaintiff was gainfully employed before she injured her shoulder, even when her hypoglycemic episodes were at their most frequent.[3] She testified at the hearing that "most" of her hypoglycemic episodes were "not terribly debilitating." (PageID.85.) The ALJ found that "the objective findings were somewhat inconsistent with Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms." (PageID.55.)[4] Indeed, she noted that "the claimant's testimony concerning the frequency of her hypoglycemic events was inconsistent with multiple treatment notes, and the medical evidence of record throughout the period in question." (PageID.56.) She therefore permissibly excluded a limitation regarding work absences from the RFC.

Plaintiff also argues that the ALJ misunderstood the nature of the effects of the hypoglycemic events on her because the ALJ wrote that Plaintiff "reported feeling unsteady on her feet when her blood sugar was low," but notes that "she has no specific history of falls," and

---

[3] As the Commissioner notes, Plaintiff continued to work at substantial levels of gainful activity during the periods where she indicates she had numerous hypoglycemic episodes: she had earnings of $35,637.45 in 2016 and $33,894.53 in 2017. (Br. at PageID.488, citing PageID.245.) Plaintiff argues that she was only able to work because of the FMLA's protections, which prevented her employer from firing her. (PageID.496.) However, she has not presented evidence to support that. On the contrary, a Family Medical Leave Act Tracking Sheet dated November 16, 2017, indicates that Plaintiff worked 1971.37 hours in the prior 12 months and required only 38.16 "medical hours" in that period. (PageID.239.) The Family Medical Leave Act Tracking Sheet dated January 5, 2017, indicates that Plaintiff worked 2035.98 hours in the prior 12 months and required only 41.04 "medical hours." (PageID.222.) The form dated June 21, 2016, indicates that Plaintiff worked 1872 hours in the prior 12 months and required only 61.16 "medical hours" in that period. (PageID.207.) This would suggest she was not excessively absent from her job in the period before the alleged onset date, which coincided with her shoulder injury.

[4] The ALJ also considered in her decision that Doctor Paff, who treated Plaintiff's shoulder, noted concerning comments Plaintiff has made "regarding her willingness and interest to return to work postoperatively, which raised concerns for him." (PageID.56.) Indeed, he specifically indicated that her comments "cast the specter of possible malingering" on April 9, 2018. (PageID.333.) The ALJ also noted that Dr. Paff also stated that Plaintiff made comments like, "I guess I'll just have to go on disability for the rest of my life," and "I guess I'll never go back to work again." (*Id.*, citing PageID.422.) Those occurred on April 19, 2018, but he noted that she made similar comments prior to her shoulder operation, as well. (PageID.422.)

she did not require "the use of any assistive devices, such as canes, walkers, wheelchairs, or crutches." (Br. at PageID.476, citing PageID.53.) However, the ALJ's comments are better read as reflecting her determination that the RFC did not need to be further restricted based on dizziness and mobility issues (such as the use of an assistive device).

As evidence that the ALJ did not properly restrict Plaintiff's RFC to account for hypoglycemic episodes, Plaintiff argues that there are *no* restrictions in her RFC that relate to the hypoglycemic episodes, which there should be if it is a "severe impairment." However, the RFC indicates that Plaintiff cannot "climb ladders, ropes, or scaffolds" (PageID.52), which would be relevant to her symptom of feeling unsteady on her feet, although it is also appropriate given her shoulder pain. Likewise, the restriction to light work includes exertional limitations. 20 C.F.R. § 404.1527(b). Indeed, the ALJ stated that "exertional and postural restrictions were incorporated into the residual functional capacity to accommodate the claimant's status post-bariatric surgery, and her alleged pain, including right shoulder pain." (PageID.55.) Certainly, exertional limitations address Plaintiff's claim that hypoglycemic episodes leave her "too tired to work" (Br. at PageID.499), even if not to the extent that she claims would be necessary (days off work).

Plaintiff's fundamental argument throughout is that the ALJ should have included greater restrictions in the RFC, including regular absences from work, which would have precluded employment. However, when viewed through the required lens of the deferential substantial evidence standard, and in light of all of the evidence in the record, the Court finds that the ALJ complied with the required standards, and substantial evidence supports her findings.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: September 24, 2021  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge